# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **SOUTHERN DENTAL BIRMINGHAM LLC,** ) ) | |
| Plaintiff, ) ) | CASE NO: _____ |
| v. ) ) | |
| **THE CINCINNATI INSURANCE COMPANY,** ) ) | **JURY TRIAL DEMANDED** |
| Defendant. ) | |

## COMPLAINT

Plaintiff Southern Dental Birmingham LLC brings this action against Defendant The Cincinnati Insurance Company and alleges based upon investigation, experience, information and belief as follows:

## INTRODUCTION

1. Plaintiff operates Southern Dental Birmingham LLC, which is a full-service dental clinic located in Birmingham, Alabama, offering services in cosmetic, general and family, and restorative dentistry. A substantial portion of Plaintiff's business income is derived from elective dental procedures.

2. To protect its business in the event that it suddenly had to suspend operations for reasons outside of its control, or in order to prevent further property damage, Plaintiff purchased insurance coverage from Defendant, including specialty property coverage, as set forth in Defendant's Business Income (and Extra Expense)

1

Coverage Form (Form FA 213 05 16) (attached hereto as Exhibit 1).

3. Plaintiff's insurance policy through Defendant is an "all-risk" policy that provides coverage for all non-excluded business losses.

4. Plaintiff's policy through Defendant provides "Business Income" coverage, which promises to pay for loss due to the necessary suspension of operations following loss to property.

5. Plaintiff's policy through Defendant also provides "Civil Authority" coverage, which promises to pay for loss caused by the action of a civil authority that prohibits access to the Covered Property.

6. Plaintiff's policy through Defendant also provides "Extra Expense" coverage, which promises to pay the expense incurred to minimize the suspension of business and to continue operations.

7. Unlike many policies that provide Business Income coverage (also referred to as "business interruption" coverage), the policy issued by Defendant does not include, and is not subject to, any exclusion for losses caused by the spread of viruses or communicable diseases.

8. On March 28, 2020, Plaintiff was forced to suspend or reduce business operations at Southern Dental Birmingham LLC due to COVID-19 (a.k.a. "coronavirus" or "SARS-CoV-2") and the resultant closure orders issued by civil authorities in Alabama.

9. Plaintiff made a claim with Defendant under its policy for business interruption coverage, including business income losses and extra expenses incurred.

## PARTIES

10. Plaintiff Southern Dental Birmingham LLC is a limited liability company organized and existing under the laws of Alabama, which is located in Birmingham, Alabama.

11. Defendant The Cincinnati Insurance Company is a corporation organized and existing under the laws of Ohio, which has its statutory headquarters at 6200 South Gilmore Road, Fairfield, OH 45014-5141.

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), which provides federal courts original jurisdiction over any civil action in which the parties are citizens of different states and where the matter in controversy exceeds in the aggregate the sum of $75,000, exclusive of interest and costs. There is complete diversity of citizenship between Plaintiff and Defendant because Plaintiff is an Alabama corporation with its principal place of business in Alabama while Defendant is an Ohio corporation with its principal place of business in Ohio.

13. This Court has personal jurisdiction over Defendant because it has

purposefully availed itself of the privilege of conducting activities in the forum by soliciting, transacting, and conducting its insurance business within the State of Alabama, including issuing insurance policies (including the Policy at issue) and administering claims within the State. As such, Defendant has maintained systematic and continuous business contacts within the State of Alabama, by and through their agents and/or sale representatives.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant is a corporation that has substantial, systematic, and continuous contacts in the State of Alabama and, as a result, is subject to personal jurisdiction in this District.

15. The acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

## FACTS

### A. Insurance Coverage

16. Defendant entered into a contract of insurance with the Plaintiff, whereby Plaintiff agreed to make payments to Defendant in exchange for the Defendant's promise to indemnify the Plaintiff for losses, including, but not limited to, business income losses at Plaintiff's location at 4960 Valleydale Road #100,

Birmingham, Alabama, 35242 (the "Covered Property"), which is owned, managed, and controlled by the Plaintiff.

17. The Covered Property is covered under Policy number ECP 036 11 02, issued by Defendant. (hereinafter the "Policy").

18. The Policy provides (among other things) property, business personal property, business income and extra expense, civil authority order, contamination, and additional coverages.

19. Plaintiff faithfully paid policy premiums to Defendant specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of civil authority.

20. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically and expressly excluded or limited in the Policy. Defendant agreed to "pay for direct 'loss' to Covered Property . . . caused by or resulting from any Covered Cause of Loss." The policy defines Covered Cause of Loss as direct physical loss or damage "unless the 'loss' is excluded or limited" by the Policy.

21. In the policy, Defendant did not exclude or limit coverage for losses from the spread of viruses or communicable diseases.

22. In the Business Income (and Extra Expense) Coverage Form,

5

Defendant agreed to pay for Plaintiff's actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage. A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Defendant agreed to pay for loss of Business Income during the "period of restoration" that begins at the time of direct physical loss or damage.

23. "Business Income" means net income (or loss) before tax that Plaintiff and the other Class members would have earned if no physical loss or damage had occurred as well as continuing normal operating expenses incurred.

24. In the Business Income (and Extra Expense) Coverage Form, Defendant also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

25. "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

26. In the Business Income (and Extra Expense) Coverage Form, Defendant also agreed to "pay for the actual loss of 'Business Income'" that Plaintiff sustains "and any Extra Expense . . . caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property near the Covered Property, the civil authority prohibits access to property

immediately surrounding the damaged property, the Covered Property is within the prohibited area, and the civil authority action is taken "in response to dangerous physical conditions."

27. Losses caused by COVID-19 and the related closure orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, and Civil Authority provisions of the Policy.

### B. The Coronavirus Pandemic

28. On March 11, 2020, the World Health Organization declared that COVID-19 constituted a global pandemic.

29. On March 13, the Governor for the State of Alabama declared the COVID-19 pandemic a public health state of emergency.

30. The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. It is clear that contamination of the Covered Property would be a direct physical loss requiring remediation to clean the surfaces of the Covered Property.

31. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

32. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

33. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, *i.e.* "fomites," for up to twenty-eight (28) days.

34. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

### C. The Covered Cause of Loss

#### 1. Physical Loss

35. Losses due to the COVID-19 virus pandemic are a Covered Cause of Loss that is not excluded under the Policy.

36. The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their

presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage.

37. The COVID-19 pandemic caused direct physical loss of or damage to the Covered Property under the Policy by denying use of and damaging the Covered Property and by causing a necessary suspension of operations during a period of restoration.

38. Further, the COVID-19 pandemic renders the Covered Property unsafe, uninhabitable, or otherwise unfit for its intended use, which constitutes direct physical loss.

39. Additionally, Plaintiff's loss of use of the Covered Property constitutes direct physical loss.

### 2. Civil Authority Orders

40. The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

41. On March 19, 2020, the Alabama State Health Officer issued a civil

authority order (attached hereto as Exhibit 2) requiring that "all elective dental and medical procedures" be delayed, which took effect immediately. The Closure Order recognizes that "COVID-19 in the State poses the potential of widespread exposure to an infectious agent that poses significant risk of substantial harm to a large number of people."

42. On March 19, 2020, the Jefferson County Health Officer issued a civil authority order (attached hereto as Exhibit 3) requiring the closure of all nonessential businesses and services. Further, the Closure Order required that "all elective dental and medical procedures" be delayed, which took effect immediately. The Closure Order recognizes that "community transmission of the infectious agent COVID-19 in Jefferson County that poses significant risk of substantial harm to a large number of people."

43. On March 27, 2020, the Alabama State Health Officer issued a civil authority order (attached hereto as Exhibit 4) requiring the closure of all nonessential businesses and services. Further, the Closure Order required the postponement of all dental procedures, without a limited exception for "procedures necessary to treat an emergency medical conditions" and "to avoid serious harm from an underlying condition or disease, or necessary as part of a patient's ongoing and active treatment." This order has been in effect since March 28, 2020. The Closure Order recognizes that "COVID-19 in the State poses the potential of widespread exposure

to an infectious agent that poses significant risk of substantial harm to a large number of people."

44. On April 3, 2020, the Alabama State Health Officer issued a civil authority Stay-at-Home order (attached hereto as Exhibit 5) requiring Alabama residents to "stay at his or her place of residence except as necessary to perform . . . 'essential activities.'" The order reiterated that dental procedures were to be postponed with the limited exceptions detailed in the Paragraph 42 of this Complaint.

45. These Closure Orders and proclamations, as they relate to the closure of all "non-essential businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated by COVID-19.

46. These Closure Orders prohibited access to Plaintiff's Covered Property and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss, *i.e.* the COVID-19 pandemic.

### D. Impact on Plaintiff

47. On or about March 19, 2020, as a result of the COVID-19 pandemic

concerns and the Closure Orders referenced herein, Plaintiff was forced close its doors to its dental clinic with the exception of emergency dental procedures, which are a *di minimis* portion of Plaintiff's business. A substantial portion of Plaintiff's business income is derived from elective dental procedures.

48. Because people—staff, patients, community members, and others—frequent all areas of Plaintiff's property, there is an ever-present risk that the Covered Property is contaminated and would continue to be contaminated if the business remained open to the public.

49. Because the business is conducted in an enclosed building, the Covered Property is more susceptible to being or becoming contaminated, as respiratory droplets are more likely to be retained on the Covered Property and fomites within, and remain viable for far longer as compared to other facilities with open-air ventilation.

50. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the activities of the patients and the employees require them to interact in close proximity to the property and to one another. Also, dentistry requires personal contact between Plaintiff's employees and patients, which heightens the risk of COVID-19 transmission.

51. The virus is physically impacting the Covered Property. Any effort by the Defendant to deny the reality that the virus causes physical loss and damage

would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public.

52. As a result of the COVID-19 pandemic and the Closure Orders, Plaintiff and the other Class members lost Business Income and incurred Extra Expense. The covered losses incurred by Plaintiff and owed under the Policy are increasing daily.

53. Plaintiff submitted a claim for loss to Defendant under its Policy due to the presence of COVID-19 and the Closure Orders.

54. On April 29, 2020, Defendant sent Plaintiff a reservation of rights stating that for a loss to be covered under the Policy, there must be a "physical effect on covered property, such as a deformation, permanent change in physical appearance or other manifestation of a physical effect." However, the Policy makes no mention of a "physical effect" requirement to establish a covered loss under the Policy.

55. A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response is necessary. As a result of the COVID-19 pandemic and the Closure Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the

Policy.

## CAUSES OF ACTION
## COUNT I—DECLARATORY JUDGEMENT

56. Plaintiff re-alleges and incorporates by reference Paragraphs 1-52 as if fully set forth herein.

57. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

58. An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy to reimburse Plaintiff for the business interruption losses incurred by Plaintiff in connection with suspension of their business due to COVID-19 and the civil authority orders in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

    a. The Closure Orders constitute a prohibition of access to Plaintiff's Covered Property;

    b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

    c. The Closure Orders trigger coverage;

14

    d. The Policy provides coverage to Plaintiff for any current and future closures in Chester County due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

    e. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Covered Property; and

    f. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

59. Plaintiff seeks a Declaratory Judgment to determine whether the Closure Orders constitute a prohibition of access to Plaintiff's Covered Property.

60. Plaintiff further seeks a Declaratory Judgment to affirm that the Closure Orders trigger coverage under the Policy.

61. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiffs for any current and future closures of businesses such as Plaintiff's in Jefferson County due to physical loss or damage from the Coronavirus and that the Policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Covered Property.

62. Plaintiff does not seek any determination of whether the Coronavirus is

physically in or at the Covered Property, amount of damages, or any other remedy other than declaratory relief.

## **PRAYER FOR RELIEF**

Plaintiff requests, by reason of each of the causes set forth above, an order providing as follows:

a) For a declaration that the Orders constitute a prohibition of access to Plaintiff's Covered Property;

b) For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy;

c) For a declaration that the Orders trigger coverage under the Policy;

d) For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued closures of non-essential businesses due to physical loss or damage directly or indirectly from the Coronavirus;

e) For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Covered Property or the immediate area of the Plaintiff's Covered Property; and

f) For such other relief as the Court may deem proper.

Dated: May 14, 2020.

*/s/ W. Daniel "Dee" Miles, III*

**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
dee.miles@beasleyallen.com
rachel.boyd@beasleyallen.com
paul.evans@beasleyallen.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Arnold Levin, Esq.
Laurence S. Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN, L.L.P.**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
lberman@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

*Counsel for Plaintiff*